UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| **RE PALM SPRINGS II, LLC,** | § | |
| | § | |
| Debtor, | § | |
| ------------------------------------------------- | § | |
| **SR CONSTRUCTION, INC.,** | § | |
| | § | |
| Plaintiff/Appellant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-3486-B |
| | § | |
| **RE PALM SPRINGS II, LLC and HALL** | § | |
| **PALM SPRINGS, LLC,** | § | |
| | § | |
| Defendants/Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court in this bankruptcy appeal is Appellant SR Construction, Inc. ("SRC")'s,

appeal of the Credit Bid and Sale Order from the bankruptcy court (Doc. 1). For the reasons that

follow, the appeal is **AFFIRMED** in all respects. This appeal is **DISMISSED WITH PREJUDICE**.

## I.

## BACKGROUND

This is a bankruptcy appeal wherein the lender has become the owner of the bankruptcy

estate and no other creditors are likely to receive anything of value. SRC appeals the Credit Bid

Order of the bankruptcy court in the pending Chapter 11 bankruptcy of RE Palm Springs II, LLC

("RE Palm Springs"). *See* Doc. 14, Appellant's Br., 1. Below, the Court briefly recounts the facts

giving rise to the order and recounts additional facts from the record where necessary to address the

parties' arguments.

- 1 -

In 2017, SRC was engaged to construct a hotel in Palm Springs, California (the "Property"). Doc. 14, Appellant's Br., 5. The then-owner of the Property obtained construction financing from Hall Palm Springs, LLC ("HPS") secured by a deed of trust in the Property. *Id.* at 4, 6. SRC was not paid for its work and was eventually terminated mid-project. *Id.* at 6. SRC maintains that at the time it was terminated, it was owed over $14,000,000 for work it had completed. *Id.* After it was terminated, SRC recorded a mechanic's lien on the Property and filed suit in California (the "State Court Action") seeking to foreclose on such lien. *Id.* at 6–7.

Meanwhile, the then-owner of the Property defaulted on its loan with HPS, and HPS accelerated the loan. *Id.* at 5. Soon after, the organizer of HPS formed RE Palm Springs.[1] *Id.* The original owner of the Property then transferred the Property to RE Palm Springs and a grant deed was recorded. *Id.* According to SRC, RE Palm Springs "gave no consideration for the [g]rant [d]eed, but took ownership subject to $50 million in liens and security interests." *Id.* RE Palm Springs then filed its voluntary Chapter 11 bankruptcy petition. *Id.*

On August 24, 2020, the bankruptcy court held a hearing to adjudicate Debtor's Sale Motion. *Id.* at 9. The Sale Motion asked the court to approve of a bid auction process with a stalking horse bidder. *Id.* At the hearing, the stalking horse bidder revealed a bid amount of $35,430,000. *Id.* The bankruptcy court approved the Debtor's Sale Motion at the hearing. Doc. 12-7, R., 10823–24. The Court codified the ruling in a written order on August 26, 2020, which, in relevant part, required the following: the stalking horse asset purchase agreement filed by August 28, 2020; an additional deposit of $2,000,000 by the stalking horse bidder by September 28, 2020; all qualifying

---

[1] According to the record, HPS formed an entity called Hall Palm Springs II, LLC, but that entity changed its name to RE Palm Springs II, LLC on May 28, 2020. *Id.*

bids submitted by October 5, 2020; final bids from qualifying bidders submitted by October 12, 2020; and a sale hearing on October 16, 2020. Order, *In re RE Palm Springs II, LLC*, No. 20-31972 (Bankr. N.D. Tex. Aug. 26, 2020), Doc. No. 108, 2–4. Ultimately, the stalking horse bidder withdrew its bid, and the auction produced no other bids. Doc. 27, Appellant's Suppl. Br., 13–14; Doc. 14, Appellant's Br., 9.

With no other bids for the Property, HPS moved the bankruptcy court to authorize a credit bid where it would buy the Property by offsetting the remaining construction loan amount. *See* Expedited Mot., *In re RE Palm Springs II, LLC*, No. 20-31972 (Bankr. N.D. Tex. Oct. 13, 2020), Doc. No. 198. Before the bankruptcy court ruled on this motion, SRC filed an adversary proceeding in the bankruptcy court against HPS and RE Palm Springs (the "Adversary Proceeding") seeking, among other relief, an injunction enjoining the sale of the Property pending determinations of the propriety of the initial transfer of the Property to RE Palm Springs from the prior owner and the priority of SRC's security interest in the Property. Doc. 3-17, Movant's Ex. Q, 4. That proceeding remains pending. Nonetheless, by an order dated November 9, 2020, the bankruptcy court accepted HPS's credit bid (the "Credit Bid Order"). Order, *In re RE Palm Springs II, LLC*, No. 20-31972 (Bankr. N.D. Tex. Nov. 9, 2020), Doc. No. 248. Then, following two days of evidentiary hearings, the bankruptcy court found, among other things, that HPS was a good-faith purchaser under 11 U.S.C. § 363(m) and approved the sale of the Property. Order at 4–7, *In re RE Palm Springs II, LLC*, No. 20-31972 (Bankr. N.D. Tex. Nov. 18, 2020), Doc. No. 262 (the "Sale Order").

SRC sought a stay of the Sale Order from the bankruptcy court but did not receive one. *Id.* Soon after, SRC appealed the Credit Bid Order and the Sale Order in this Court and sought a stay of the Sale Order pending resolution of its appeal. *See* Doc. 2, Mot. Stay. The Court denied the

motion, *see SR Constr. Inc., v. Hall Palm Springs, LLC, 2020* WL 7047173, at *1 (N.D. Tex. Dec. 1, 2020)[2], and the sale of the Property closed on January 26, 2021. Doc. 14, Appellant's Br., 12.

SRC raises three issues on appeal. First, SRC argues that "the Bankruptcy Court erred . . . in granting HPS'[s] *Expedited Motion to Authorize Credit Bid Pursuant to 11 U.S.C. § 363(k)*" because HPS did not present admissible evidence of "a valid, senior-most secured interest" on the Property. *Id.* at 1. Second, SRC argues that the bankruptcy court erred by approving the Credit Bid Order without verifying the amount of HPS's security interest on the Property. *Id.* Third, SRC contends that the bankruptcy court erred and violated SRC's due process rights by "issuing the Credit Bid Order prior to even considering the written objections and Adversary Proceeding brough by SRC." *Id.*

On April 5, 2021, HPS moved to dismiss SRC's appeal. Doc. 15, Mot. Dismiss. The Court suspended all appellate briefing deadlines pending the resolution of HPS's motion. Doc. 17, Order. On July 29, 2021, the Court denied HPS's motion to dismiss and directed the parties to brief the Court on "the issue of whether HPS was a good-faith purchaser." Doc. 26, Order, 6. Appellant SRC filed its brief on August 27, 2021. Doc. 27, Appellant's Suppl. Br. HPS filed its appellee brief on September 24, 2021. Doc. 28, HPS's Appellee Br. The Debtor, RE Palm Springs, filed its appellee brief on September 27, 2021. Doc. 29, RE Palm Springs's Appellee Br. SRC filed its reply on October 8, 2021. Doc. 30, Appellant's Reply. The appeal is fully briefed and ripe for review.

---

[2] On April 13, 2021, the Court consolidated cause number 3:20-cv-3487-B into the above-styled action. *See* Doc. 18, Order.

## II.

## LEGAL STANDARD

Final judgments, orders, and decrees of a bankruptcy court may be appealed to a federal district court. 28 U.S.C. § 158(a). Because the district court functions as an appellate court in this scenario, it applies the same standards of review that federal appellate courts use when reviewing district court decisions. *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992) (citations omitted). "[T]he Bankruptcy Code forbids appellate review of certain un-stayed orders . . . ." *In re Pacific Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009) (citing 11 U.S.C. §§ 363(m), 364(e)). Section 363(m) moots appeals "so long as the sale was made to a good-faith purchaser and was not stayed pending appeal." *In re Pursuit Holdings (NY), LLC*, 845 F. App'x 60, 62 (3d Cir. 2021) (quoting *In re WestPoint Stevens, Inc.*, 600 F.3d 231, 247 (2d Cir. 2010)).

The Fifth Circuit has defined "good faith" two ways. *In re TMT Procurement Corp.*, 764 F.3d 512, 521 (5th Cir. 2014) (per curiam). By one definition, a "good faith purchaser" is "one who purchases the assets for value, in good faith, and without notice of adverse claims." *Hardage v. Herring Nat'l Bank*, 837 F.2d 1319, 1323 (5th Cir.1988) (quoting *In re Willemain*, 764 F.2d 1019, 1023 (4th Cir.1985)). And, "knowledge of an adverse claim requires something more" than "[h]aving knowledge that there are objections to the transaction" that a party is trying to get reversed in a district or appeals court. *In re TMT*, 764 F.3d at 522 (quoting *In re EDC Holding Co.*, 676 F.2d 945, 947 (7th Cir.1982)). For the alternative definition, "the misconduct that would destroy a purchaser's good faith status . . . involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Bleaufontaine, Inc.*, 634 F.2d 1383, 1388 n.7 (5th Cir. Unit B Jan. 1981) (quoting *In re Rock Indus.*

*Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)). "The proponent of 'good faith' bears the burden of proof." *In re TMT*, 764 F.3d at 520 (citation omitted). Whether to review a finding of "'good faith' . . . *de novo* or under clear error is a matter of some confusion in [the Fifth Circuit]." *Id.* at 520–21.

## III.

## ANALYSIS

"It is well established" that claims not presented to the bankruptcy court cannot be heard on appeal. *In re Ginther Trs.*, 238 F.3d 686, 688–89 (5th Cir. 2001) (per curiam) (quoting *In re Gilchrist*, 891 F.2d 559, 561 (5th Cir. 1990)). Thus, an appellant may not appeal the good faith of a purchaser without first having raised the issue in the bankruptcy court. *In re Davis*, 746 F. App'x. 392, 396 (5th Cir. 2018) (per curiam); *In re Gilchrist*, 891 F.2d at 561.

SRC raised the issue of good faith in the Bankruptcy Court. Appellant's Am. Designation R. & Statement Issues Appeal, *In re RE Palm Springs II, LLC*, No. 20-31972 (Bankr. N.D. Tex. Nov. 18, 2020), Doc. No. 284. Therefore, the Court will consider SRC's arguments about HPS's status as a good faith purchaser of the Property and addresses each argument below. Furthermore, the Court's review is limited to the issue of good faith because that is the only preserved ground for review of the Credit Bid Order and Final Sale Order under 11 U.S.C. § 363(m). *See Pursuit Holdings (NY), LLC*, 845 F. App'x at 62. The Court will first address the issue of the proper standard of review and then address the issue of whether HPS was a good faith purchaser.

### A.    *Standard of Review*

Before diving into the substantive arguments of the parties, the Court must first decide whether to review the bankruptcy court orders de novo or under a clear error standard. SRC urges the Court to review the orders de novo while HPS and RE Palm Springs urge the Court to review

the orders for clear error. Doc. 27, Appellant's Br., 3; Doc. 30, Appellant's Reply, 2; Doc. 28, HPS's Appellee Br., 12; Doc. 29, RE Palm Springs's Appellee Br., 2. The Fifth Circuit has yet to decide whether a district court should apply de novo or clear error review for a finding of good faith by the bankruptcy court. *TMT Procurement*, 764 F.3d at 520–21.

The district court reviews the bankruptcy court's findings of fact for clear error and reviews issues of law de novo. *In re Soileau*, 488 F.3d 302, 305 (5th Cir. 2007). Mixed questions of law and fact are reviewed de novo. *TMT Procurement*, 764 F.3d at 519. Several circuit courts have held that "[t]he 'good-faith purchaser' determination is a mixed question of law and fact," and thus, reviewed de novo. *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997); *see also In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st Cir. 1993); *In re Revco D.S., Inc.*, 901 F.2d 1359, 1366 (6th Cir. 1990); *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986). But other circuit courts, including the Fifth Circuit, have reviewed a finding of good faith for clear error. *In re Beach Dev. LP*, 2008 WL 2325647 (5th Cir. June 6, 2008) (per curiam); *In re Cooper Commons, LLC*, 430 F.3d 1215, 1220 (9th Cir. 2005). However, the opinion in *In re Beach Development LP*, as an unpublished opinion, did not establish precedent and only serves the purpose of "res judicata, collateral estoppel or law of the case." Fed. R. App. P. 47.5.4. Therefore, the Court is not bound by the application of clear error review in *In re Beach Development LP*.

Under clear error or de novo review, the Court would reach the same determination in this case. Therefore, the Court need not decide today the appropriate level of review for a bankruptcy appeal for a question of a good faith purchaser. *See TMT Procurement*, 764 F.3d at 521 ("[U]nder either standard of review, we find that the determination of good faith does not pass muster.").

B.    *Good Faith Purchaser Under 363(m)*

SRC argues that HPS was a not a good faith purchaser under either Fifth Circuit definition of good faith. Doc. 27, Appellant's Suppl. Br., 23, 28. HPS, among other arguments, claims the bankruptcy court correctly concludes it was a good faith purchaser and that this appeal is, therefore, statutorily moot under § 363(m). Doc. 28, HPS's Appellee Br., 17. HPS states that SRC relies on "baseless conjecture to construct an alternative view of the facts" while not demonstrating that any factual findings by the bankruptcy court are clearly erroneous. *Id.* at 21–23. RE Palm Springs echoes the argument made by HPS. Doc. 29, RE Palm Springs's Appellee Br., 5.

The Court will now examine whether HPS was a good faith purchaser under each definition, beginning with the good faith definition that requires "notice of adverse claims." *See Hardage*, 837 F.2d at 1323.

1.    <u>Whether HPS Knew of an Adverse Claim</u>

SRC contends that HPS was not a good faith purchaser under § 363(m) because HPS knew of adverse claims. Doc. 27, Appellant's Suppl. Br., 23. SRC relies on the *TMT Procurement* and *Popp* cases for this argument. *Id.* at 23–25. SRC asserts that the State Court Action and Adversary Proceeding before the Bankruptcy Court qualify as adverse claims. *Id.* at 26. SRC contends that the transfer of property is voidable under CALIFORNIA CIVIL CODE §§ 3439.02, 3439.04, 3439.05. *Id.* at 26. If voided, the "Property would not be Property of the Debtor's bankruptcy case" and could not have been sold in the Bankruptcy Court. *Id.* at 27. SRC concludes that HPS's knowledge of these adverse claims "means that HPS could not be a good faith purchaser within the meaning of Bankruptcy Code § 363(m)." *Id.* at 28.

HPS argues that the Bankruptcy Court knew of the State Court Action, the Adversary Proceeding, and the objections to HPS's claim and took these into consideration when determining HPS's good faith purchaser status. Doc. 28, HPS's Appellee Br., 24–25, 27. Further, HPS asserts that an adverse claim relates only to a dispute of actual ownership. *Id.* at 25. As for the State Court Action, HPS contends that the statutes only make a transfer of property voidable to a creditor and would not void the transfer as to everyone with an interest in the Property. *Id.* at 26. Since SRC seeks foreclosure of its lien, this tacitly acknowledges SRC's lack of an ownership interest in the Property. *Id.* at 27. Lastly, HPS asserts that even if a bona fide dispute existed as to the ownership of the Property, this would not preclude HPS from being a good faith purchaser. *Id.* at 28–30.

Next, RE Palm Springs takes issue with SRC's reliance on *TMT Procurement* because "the Fifth Circuit examined the good faith of a lender—not a purchaser—" and knowledge of an adverse claim requires knowledge of a claim by a third-party, which SRC is not. Doc. 29, RE Palm Springs's Appellee Br., at 8–9. RE Palm Springs then discusses four cases that RE Palm Springs contends are more analogous to the facts of this case. *Id.* at 10–12.

In *TMT Procurement*, the appellant initiated an action in state court and alleged "breach of fiduciary duty, fraud, fraudulent inducement, negligent misrepresentation, and unjust enrichment" by the appellee, which resulted in appellee obtaining 100,000,000 shares of appellant's stock and three seats on appellant's board of directors. 764 F.3d at 515. The following year, twenty-three foreign marine shipping companies owned by the appellee filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code. *Id.* at 516. As part of the bankruptcy proceedings, the bankruptcy court ordered the appellee to place 25,000,000 shares of appellant's stock in the court's custody. *Id.* at 516–17. The bankruptcy court later approved two DIP Orders that approved

$20 million in post-petition financing and gave the DIP Lender "a first priority lien and security interest in the" appellant's stock. *Id.* at 518. The appellant alleged "the DIP Lender did not act in 'good faith'" because "the DIP Lender was on notice of [the appellant's] adverse claim to the [stock]." *Id.* at 520–21. The Fifth Circuit held that "[t]he DIP Lender had knowledge that a third-party, entirely unrelated to the bankruptcy proceedings, had an adverse claim to the [stock]" and therefore, "the DIP Lender does not qualify as a good faith purchaser or lender." *Id.* at 522.

The Court finds the *TMT Procurement* case dissimilar to the present action. First, the appellant in *TMT Procurement* had an ownership interest in the property in dispute—the stock—while SRC has not asserted an ownership interest in the Property, only a mechanic's lien. Doc. 15-7, R., 10676; *see TMT Procurement*, 764 F.3d at 515. Second, *TMT Procurement* concerned the good faith of a lender and not a purchaser, which created a different relationship between the debtor and appellants than here. *Id.* at 518.

However, the Court finds the discussion of an adverse claim in *TMT Prcurement* instructive. A claim is defined "broadly to include a right to payment or a right to equitable remedy." *Id.* at 522 (quoting 11 U.S.C. § 101(5)). Further, a "right to payment' [means] nothing more nor less than an enforceable obligation." *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). Under this broad definition, SRC had a claim because it had a "right to payment, whether or not . . . reduced to judgment." 11 U.S.C. § 101(5). However, SRC's claims fall outside the ambit of the definition of an adverse claim. An adverse claim must be something more than trying to reverse the bankruptcy court. *TMT Procurement*, 764 F.3d at 522. This appeal, the Adversary Proceedings and the State Court Action are all attempts to reverse the bankruptcy court. The Adversary Proceeding before the bankruptcy court requested that the bankruptcy court determine that the Debtor's interest in the

Property is "voidable as a fraudulent transfer under California law." *In re RE Palm Springs II, LLC*, No. 20-03135 (Bankr. N.D. Tex. Oct. 30, 2020), Doc. No. 1, ¶ 10. SRC relies on the same statutory provisions in the State Court Action, CALIFORNIA CIVIL CODE §§ 3439.04 and 3439.05. *See id.* ¶¶ 61–98. Section 3439.04(a)(1) makes voidable the transfer of the Property if HPS acted with "actual intent to hinder, delay, or defraud any creditor of the debtor." And § 3439.05(a) potentially voids the transfer of the Property if the debtor did not "receiv[e] a reasonably equivalent value." Both statutes make the transfer of the Property voidable and not void as to the creditor. CALIFORNIA CIVIL CODE §§ 3439.04 ("A transfer made or obligation incurred by a debtor is voidable . . . ."); § 3439.05 ("A transfer made or obligation incurred by a debtor is voidable . . . ."). Thus, the claims in the Adversary Proceeding and State Court Action—if successful—would reverse the bankruptcy court as to SRC and are therefore not adverse claims. Accordingly, HPS purchased the Property without knowledge of adverse claims.

Turning to the *Popp* case, SRC fares no better. There, the appellant appealed two bankruptcy court orders authorizing the sale of property. *In re Popp*, 323 B.R. 260, 262 (B.A.P. 9th Cir. 2005). The appellant had "some interest in the property," but the bankruptcy court authorized the sale of the property as part of the bankruptcy estate before determining the full extent of the interests in the property in the adversary proceeding. *Id.* at 263–64. The Ninth Circuit Bankruptcy Appellate Panel reversed the bankruptcy court "since the court's determination of disputed ownership was duplicative and parallel to the essential subject of a pending adversary proceeding." *Id.* at 269. This could lead to "inconsistent and ultimately inconclusive litigation as to the true ownership of the Property." *Id.*

The issue for the court in *Popp* was who owned the property. *Id.* at 269. The court specifically held that courts should "promote consistent and unfragmented decisionmaking when faced with the

need to determine predicate issues such as property ownership in the Section 363 context." *Id.* at 270. The Ninth Circuit Bankruptcy Appellate Panel took issue with the bankruptcy court determining ownership of the property in two separate proceedings "that was not binding in any way in the [other proceeding]." *Id.* Here, SRC does not contend that it has any possessory interest in the Property. Through the Adversary Proceeding and the State Court Action, SRC seeks to set aside the conveyance of the Property from the original owner to RE Palm Springs as a fraudulent conveyance. Doc. 30, Appellant's Reply, 13. As stated above, the Adversary Proceeding and State Court Action seek to overturn the bankruptcy court, not to obtain possession of the Property. Setting aside the conveyance would not give SRC any possessory interest in the Property and therefore, cannot be an adverse claim to the Property.

As the State Court Action and Adversary Proceeding do not qualify as adverse claims, HPS was a good faith purchaser of the Property under this definition of a good faith purchaser.

### 2.    Whether the Purchase of the Property Involved Fraud or Collusion, or HPS Took Grossly Unfair Advantage of Other Bidders

SRC's second argument is that HPS manipulated the bankruptcy and sale process to "launder" the Property through the bankruptcy proceedings. Doc. 27, Appellant's Br., 20. SRC liberally cites to the record in its reply brief to set forth the facts for its argument. Doc. 30, Appellant's Reply, 4–10. SRC starts by attempting to refute the bankruptcy court's "findings that the purchase agreement was the result of arm's length negotiations between the Debtor and HPS." Doc. 27, Appellant's Suppl. Br., 29; Doc. 30, Appellant's Reply, 4–8. Next, SRC argues that the bidding procedures essentially prevented other bidders from submitting any competing bids and guaranteed HPS would have the only bid at the end of the auction process and take possession of the Property. Doc. 27, Appellant's Suppl. Br., 30–32; Doc. 30, Appellant's Reply, 9. Lastly, SRC contends "that

HPS never advanced any moneys to the Debtor pre-bankruptcy" and "never verified what amount if any was advanced by HPS to the Original Owner." Doc. 27, Appellant's Suppl. Br., 32; Doc. 30, Appellant's Reply, 7–10.

HPS rebuts SRC by arguing that HPS's conduct during the purchase of the Property demonstrates good faith. Doc. 28, HPS's Appellee Br., 30. Even though HPS was an insider, HPS contends that this does not establish bad faith per se. *Id.* at 31. HPS also contends the bankruptcy court found that HPS sufficiently distanced itself from the Debtor during the auction period, which further demonstrates good faith. *Id.* at 33. Additionally, HPS did not collude with the Debtor nor any other parties or take grossly unfair advantage of other bidders despite the expeditious nature of the short bidding process. *Id.* at 34–35.

RE Palm Springs argues that the record lacks any evidence of "fraud, collusion, or attempts to take unfair advantage of other bidders." Doc. 29, RE Palm Springs's Appellee Br., 6. First, HPS offered financing to complete construction on the Property. *Id.* Second, the auction realtor testified that HPS did not interfere in the bidding process and "all serious potential bidders were contemplating using some form of financing to be provided by HPS." *Id.* Additionally, RE Palm Springs asserts that the Bankruptcy Court found "no 'cause' to deny HPS its credit bid right under 11 U.S.C. § 363(k)" and "inferred good faith" based in part upon HPS's offer to finance construction for potential bidders. *Id.* at 7.

The Court agrees with Appellees. While the facts paint a less than rosy picture, the bankruptcy court did not err by finding that HPS purchased the Property in good faith. The Court will now address each of SRC's three contentions about the alleged manipulation of the bankruptcy and sale process in the full light of the records from the bankruptcy court.

i.    *The purchase agreement*

SRC relies on the following facts in the appellate record to argue that the purchase agreement demonstrates a lack of good faith by HPS. Doc. 30, Appellant's Reply, 4–8. HPS was the sole owner of Hall Palm Springs II, LLC and formed the Debtor for the purpose of taking title to the Property. Doc. 10-4, R., 836–37; Doc. 11-18, R., 8717; Doc. 12-8, R., 10909. The Property was valued in "as is" condition at $72,000,000 according to a January 2020 appraisal. Doc. 10-4, R., 810; Doc. 12-7, R., 10738. After defaulting on the construction loan, the original owner conveyed the Property to the Debtor without receiving any consideration. Doc. 11-9, R., 6999, 7092; Doc. 11-22, R., 9447; Doc. 12-6, R., 10474. This transfer did not include a reduction in the debt as consideration for the transfer of ownership, nor did the Debtor pay the tax under the California Documentary Transfer Tax Act.[3] Doc. 11-9, R., 6999, 7092; Doc. 12-4, R., 10381; Doc. 11-19, R., 8908; Doc. 11-22, R., 9447; Doc. 12-6, R., 10474. At the time of conveyance, the Property had $35,430,000 in debt owed to HPS and over $20,000,000 in mechanic's liens. Doc. 10-2, R., 249; Doc. 10-4, R., 838. HPS then changed the name of the Debtor from Hall Palm Springs II, LLC to RE Palm Springs II, LLC, a change that SRC asserts occurred "to disguise HPS'[s] involvement in the Original Transfer." Doc. 30, Appellant's Reply, 7 n.7; *see also* Doc. 11-18, R., 8717; Doc. 11-19, R., 8908. HPS and RE Palm

---

[3] The California Documentary Transfer Tax Act in relevant part provides:

The board of supervisors of any county or city and county, by an ordinance adopted pursuant to this part, may impose, on each deed, instrument, or writing by which any lands, tenements, or other realty sold within the county shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his or their direction, when the consideration or value of the interest or property conveyed (exclusive of the value of any lien or encumbrance remaining thereon at the time of sale) exceeds one hundred dollars ($100) a tax at the rate of fifty-five cents ($0.55) for each five hundred dollars ($500) or fractional part thereof.

CAL. REV. & TAX CODE § 11911(a).

Springs were also both involved in state court actions concerning the Property and mechanic liens on the Property in California. Doc. 11-9, R., 7092–99; Doc. 11-10, 7100–31; Doc. 11-14, R., 8033; Doc. 11-8, R., 6850; Doc. 12-7, R., 10675–76.

HPS hired $r^2$ Advisors ("$r^2$") as manager of the Debtor and transferred its membership interest in the Debtor to $r^2$. Doc. 10-2, R., 382; Doc. 11-4, R., 824–29. $r^2$ received compensation from HPS through a non-obligatory DIP loan. Doc. 10-2, R., 382–83; Doc. 10-4, R., 796. For the bankruptcy proceedings, $r^2$ recognized its role in monetizing the Property for HPS. Doc. 12-7, R., 10770.

While these facts paint the picture of a bankruptcy process that ended with a less than ideal outcome, they do not demonstrate error by the bankruptcy court. First, the conveyance provided for the net profits of the disposition of the Property to be split between HPS and the original owner, a form of consideration. *See In re KrisJenn Ranch, LLC*, 629 B.R. 589, 594 (Bankr. W.D. Tex. 2021) (discussing net profits as the consideration for the assignment of property); 17 Am. Jur. 2d Contracts § 116 (2021) ("Accordingly, sufficient consideration may consist either in some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other."). Further, the conveyance transferred all the debt to the Debtor, a detriment, and the original owner received relief from the debts, a benefit. *See* Doc. 12-8, R., 11067–68 (discussing the attachment of liens following the conveyance of the Property and finding "that there was consideration"). While the Court need not find consideration for this appeal, the Court finds no error from the bankruptcy court on this matter.

Second, the January 2020 appraisal likely received little consideration by the bankruptcy court because SRC submitted a more recent appraisal, which more accurately represented the contemporaneous real estate market. SRC's appraisal listed the "as is" value of the Property as

$56,600,000. Doc. 12-7, R., 10708. However, that appraiser relied on incorrect information to assess the value of the Property. Doc. 12-8, R., 10850–51. At the November 6, 2020 hearing in the bankruptcy court, the appraiser admitted that he used $17,956,000 as the estimated amount to complete the hotel. *Id.* at 10851. The actual estimated cost was over $31,000,000. *Id.* Thus, the actual "as is" appraisal value of the Property was approximately $43,000,000. *Id.* Ultimately, the Property obtained a credit bid of $37,279,365.74, nearly eighty-seven percent of the appraised value. *See In re Gucci*, 126 F.3d at 380 ("Generally speaking, a purchaser who pays 75 percent of the appraised value of the assets has tendered value, but where the purchaser is found to have acted in good faith the auction price suffices to demonstrate that the purchaser paid 'value' for the assets.") (citations omitted). Therefore, the Court finds no error in the assessment of the appraisals by the bankruptcy court.

Third, the California Documentary Stamp Tax provides for several exemptions to the tax. CAL. REV. & TAX CODE §§ 11901–11935. One exception applies to circumstances where the mortgagee takes the deed "in lieu of foreclosure." *Id.* at § 11926. Another exception applies to conveyances "[c]onfirmed under the Federal Bankruptcy Code." *Id.* at § 11923. While the Court did not take argument on this particular issue, the bankruptcy court did not err by not considering the California Documentary Stamp Tax to the extent that SRC desired.

Fourth, the name change of the Debtor and hiring $r^2$ demonstrates a lender with extensive involvement in the bankruptcy process, but not a lack of good faith. HPS changed the name of Hall Palm Springs II, LLC to RE Palm Springs II, LLC on May 28, 2020—less than two months before filing the Petition. Doc. 11-18, R., 8722. Neither party took the opportunity to explain the name change except for SRC's innuendo of fraudulent intent. *See* Doc. 30, Appellant's Reply, 7 n.7; Doc.

12-8, R., 11067. HPS also hired r$^2$ to manage the Property through the bankruptcy process on July 10, 2020—less than two weeks before filing the Petition—and transferred HPS's membership interest in the Property to r$^2$. *See* Doc 10-4, R., 824. Although HPS maintained a form of control over r$^2$ as the DIP Lender, SRC does not point to any facts or evidence showing that HPS exerted this control to commit a fraud upon the bankruptcy court. The only fact that SRC provides is r$^2$'s admission that their purpose was to monetize the assets. *See* Doc. 27, Appellant's Suppl. Br., 10. As the basic purposes of Chapter 11 are (1) to "preserv[e] going concerns" and (2) "maximiz[e] property available to satisfy creditors," r$^2$'s admission is nothing more than an admission of the second policy of Chapter 11 as identified by the Supreme Court. *Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 435 (1999). Therefore, the bankruptcy court did not err in evaluating these facts and finding no bad faith.

       *ii.*    *The bidding procedures*

The thrust of SRC's recitation of the next set of facts is that HPS manipulated the bidding procedures to end up with the Property at the end of the process. *See* Doc. 27, Appellant's Suppl. Br., 10–12. HPS asked the bankruptcy court to approve the bid procedures, the stalking horse bidder, and the real estate broker on the Petition Date. Doc. 10-2, R., 227, 246. HPS chose the real estate agent for the Property and obtained the stalking horse bidder. Doc. 12-8, R., 10990, 11017; Doc. 12-7, R., 10730. The stalking horse bidder contract did not contain a purchase price until after the bankruptcy court raised the issue at the August 24 hearing. Doc. 11-25, R., 10048; Doc. 12-7, R., 10660, 10777.

The bidding process consisted of six weeks of marketing, required a $2,000,000 non-refundable bid deposit, took place in California during August to October 2020 (the midst of the

Covid-19 pandemic), and granted HPS a veto right over submitted bids. Doc. 10-17, R., 3529, 3539–41; Doc. 11-24, R., 9932. After the stalking horse bidder withdrew its bid, the Debtor and HPS extended the marketing process for two more weeks. Doc. 10-17, R., 3537. An expert witness testified that six months to a year would be a more appropriate marketing period for an undeveloped hotel such as the Property. Doc. 12-8, R., 10837–38.

As for the stalking horse bidder, the original Agreement of Purchase and Sale ("APS") dated July 21, 2020—one day prior to the Petition date—did not include a price. Doc. 11-25, R., 10041, 10048. But the agreement contained a paragraph setting the price at a "price to be mutually agreed upon between Purchaser and Seller prior to the expiration of the Due Diligence Period in an aggregate amount that is not less than an amount that is acceptable to Hall Palm Springs, LLC." *Id.* at 10048. The Court finds nothing nefarious about this series of events or the lack of a purchase price because the Purchaser did not get to start the due diligence period until the effective date of the APS. *Id.* at 10057. Approximately halfway through the due diligence period, the stalking horse bidder presented the bid amount at the August 24 hearing. Doc. 12-7, R., 10660; *see also* Doc. 11-25, R., 10057 (giving the stalking horse bidder fifty-nine days to conduct due diligence). The Court finds no error by the bankruptcy court in finding no bad faith based on these facts.

The bidding process resulted in an unfortunate outcome, but it also occurred during unprecedented times. The timing and context of this case closely resembles *In re Heritage Hotel Assocs., LLC*, 2020 WL 8611083 (Bankr. M.D. Fl. Sept. 11, 2020). In *Heritage Hotel*, the Debtor sought to sell a hotel prior to the Covid-19 pandemic. 2020 WL 8611083, at *1. Unfortunately, the purchasers failed to close at the agreed $10,000,000 and the hotel had to go into a bidding process during the Covid-19 pandemic. *Id.* The bidding process was approved on August 3, 2020, with a

- 18 -

stalking horse bidder and a deadline for bids on August 20, 2020. *Id.* at *2. Ultimately, the hotel sold for $8,000,000. *Id.* While *Heritage Hotel* had a more successful outcome, the case is illustrative of the impact that Covid-19 had on finished properties. Turning to the instant case, the Property was an unfinished hotel that was only 60% complete, laden with debt with no revenue streams, and listed at a much higher price. Doc. 10-2, R., 148–210, 238; Doc. 12-8, R., 10986. The bankruptcy court approved a marketing period nearly three times the length of the bidding procedures in *Heritage Hotel*. *See* 2020 WL 8611083, at *1. Furthermore, the bankruptcy court in this case had to consider the fact that none of the parties found a lender to maintain the Property after December 31, 2020. Doc. 12-8, R., 10900–91, 11069. Thus, the deadline for disposing of the Property was December 31, 2020. *Id.* The two week marketing extension came with incentives, no Overbid Protections ($1,200,000) and no break-up fee (two percent of the cash price). Doc. 10-17, R., 3538, 3542. Therefore, the bankruptcy court did not err in considering that these facts showed good faith.

      *iii.*    *HPS's loans*

Lastly, SRC takes issue with the validity of HPS's loans that became the credit bid amount. r² never confirmed the amount of debt owed by the original owner to HPS. Doc. 12-8, R., 11029–30, 11033–34. Additionally, HPS never advanced any funds to the Debtor prior to the Petition Date because this amount would have to be transferred to the original owner. *Id.* at 10989; Doc. 11-15, R., 8221.

A credit bid allows the holder of a claim to "offset [their] claim against the purchase price of such property." 11 U.S.C. § 363(k). The statute "enables the creditor to purchase the collateral for what it considers the fair market price (up to the amount of its security interest) without committing additional cash to protect the loan." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,

566 U.S. 639, 644 n.2 (2012). The "credit bid provides a weapon for a secured creditor who is dissatisfied with a potential sales price to increase the bid to what it deems to be fair market value, thereby protecting the benefit of its bargain." *In re Phila. Newspapers, LLC*, 418 B.R. 548, 563 (E.D. Pa. 2009), *aff'd*, 599 F.3d 298 (3d Cir. 2010). "If the secured creditors submit the highest (or only) bid for the company and acquire the bankruptcy estate's assets, the creditors are, in effect, able to use the § 363 sale to trade their debt for control of the business." *In re Walter Energy, Inc.*, 911 F.3d 1121, 1153 (11th Cir. 2018).

HPS held a lien against the property in the amount of $37,279,365.74. Doc. 10-1, R., 67. The Chief Restructuring Officer never audited the amount of debt owed to HPS. Doc. 12-8, R., 11033–34. But he did have the data files and admitted to having seen the construction loan documents. *Id.* at 11033. The original loan was in the amount of $54,000,000, and HPS had not advanced the full amount of the loan to the original owner. The grant deed shows that the original owner owed $32,627,619.44 as of March 10, 2020. Doc. 11-9, R., 7092–96. By July 22, 2020, the debt had grown to $36,844,340.64. Doc. 10-2, R., 170. The loan agreement had a default rate of "over 9 percent, . . . a few million dollars a year." Doc. 12-7, R., 10797. In addition to this, HPS provided the Debtor with a $1,000,000 DIP loan at six percent interest. *Id.* at 10764, 10780–81, 10796; Doc. 10-16, R., 3178, 3331. Taking this evidence into consideration, the Court does not find any error in the bankruptcy court's evaluation of these facts.

More important than the loan amount, HPS was the senior lien holder because HPS had all parties with "any lien or liens . . . or rights (contractual or statutory) to deferred compensation, fees or payment, the undersigned has or in the future may have . . . [fully subordinate their lien] in favor of [HPS]." Doc. 10-19, R., 3910–51. SRC signed one of these subordination agreements on October

24, 2017. *Id.* at 3937. Therefore, HPS had the lien on the Property senior to any party to the subordination agreements, including SRC.

Lastly, no other party submitted a bid. The bankruptcy court made clear that other parties were welcome to submit a credit bid but none chose to do so. Doc. 12-8, R., 10942. SRC was one of the larger lien holders and could have submitted a credit bid as HPS did. *See id.* This did not occur and the only bid in front of the bankruptcy court was HPS's. *Id.* at 10935–36. The Court finds no error by the bankruptcy court in its evaluation that these facts did not show bad faith.

      *iv.*     *Final consideration of all the facts*

Taking all of these facts together, the Court finds HPS acted with good faith during the bankruptcy proceedings. The facts do not demonstrate "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *See Bleaufontaine, Inc.*, 634 F.2d at 1388, n.7. Even viewing the facts in the record in a favorable light towards SRC does not illuminate any bad faith by HPS. Ultimately, HPS submitted the only bid for the Property and acquired the Property through a trade of its debt. *See Walter Energy*, 911 F.3d at 1153. This in turn left the other creditors with nothing. Such a disappointing result does not establish that HPS acted with bad faith. Accordingly, the Court finds HPS was a good faith purchaser of the Property.

## IV.

## CONCLUSION

For the foregoing reasons, the rulings of the bankruptcy court are **AFFIRMED** in all respects. This appeal is **DISMISSED WITH PREJUDICE.**

SO ORDERED.

SIGNED: November 15, 2021.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE